Ruffin, Chief Justice,
 

 having stated the case as abovs, proceeded'as follows: The counsel for the plaintiffs, as a ground for reversing the decree, has endeavored to maintain^ the general proposition, that equity will, on behalf of any judgment creditor, lay hold of the stock or
 
 choses in action
 
 of the debtor, and apply them in satisfaction of the debt, if execution cannot be done on visible and tangible estate.
 

 With respect to the equitable property of a debtor, there seems to be no doubt of the correctness of the rule as laid down, provided the thing would be subject to execution if the equitable interest of the debtor were the legal interest in possession. But we believe the Courts in this State have never yet carried the principle far enough to embrace legal
 
 ch°ses 'in notion.
 
 In
 
 Harrison
 
 v.
 
 Battle,
 
 1 Dev. Eq. Rep. 537, Chief Justice Henderson observed, when the question of a Pure debt, arises, it will be time enough to consider whether cannot be reached. We think with him, that the question . . . , , „ . too important to be determined, until it shall so arise that its decision will be essential to the decision of the cause. The decisions of the Courts of New-York in the affirmative . . would receive the utmost consideration, both from the respect due to the learning of the Judges and to the intrinsic f°rce °f their reasons. It must, however, be observed, that the opinion of Lord Thurlow was explicitly given the other way; and seems to have been approved more than once by Lord Eldon. Moreover, it has been found necessary, or at least useful, to sanction and regulate the doctrine in New-York by statute. Upon this occasion, however, the Court leaves the question as it is found ; since the state of this case enables and requires the Court to overrule the demurrer upon a principle much less extensive than the one urged by tjje counse]) an¿ for which we have the authority of a decision in point by Lord Hardwxcke. We think there is a strong and evident equity for the plaintiff arising out of the discharge of Mr. Long as an insolvent debtor ; which operates as a complete protection of his person under the statutes. That circumstance distinguishes this from ordina-cases of judgment debts; in which the creditor can, by taking the body in execution, compel satisfaction by an as
 
 *141
 
 signment of the
 
 chose in action
 
 of the debtor. Although a creditor may not, therefore, have the right generally to come into this Court for satisfaction out of his debtor’s debts, because the Court must take notice that the law gives him the
 
 capias ad satisfaciendum,,
 
 and gives it as an adequate remedy, and therefore equity cannot say it is inadequate; yet for that very reason, this Court must interpose in a case in which the party has lost the
 
 capias ad satisfaciendum,
 
 and the law gives no other remedy in its stead, although at the same time the plain intent of the legislature was that the creditor should be paid. From necessity, therefore, lest there should be a defect of the justice meant to be provided for the creditor, the plaintiff is entitled to be relieved by force of the act of 1793. Rev. Stat. ch. 58, sec. 16. The seventh section of the act of 1773, not only exonerated the person of the debtor, but enacted that the judgment shall be held to be satisfied, and that no execution shall issue against any estate which the debtor may afterwards acquire. This provision taken in connexion with other parts of the act for
 
 the
 
 assignment and distribution of the debtor’s estate, made this a statute of bankruptcy in substance. Then comes the act of 1793, “to alter and amend” the act of 1773. It begins by reciting the former enactments respecting the judgment being satisfied, and the denial of execution; and then proceeds to recite further, that it had been experienced that those sections had been frequently productive of fraudulent conveyances to the injury of creditors, and appeared to the assembly against good morals; and then it repeals those provisions of the former law, and enacts that, after the passing of that act, execution may issue against any estate afterwards acquired by the insolvent debtor. We think it plain, that the legislature meant the act of 1793 to be substantially beneficial to, creditors ; and that while it gives an execution on which tangible property afterwards acquired can be taken and sold, it follows, in a case in which an interest of the debtor equally valuable with tangible property exists, but which cannot be reached directly for the want any suitable process against it, nor indirectly for the reason of the exemption of the debtor’s person, that the Court
 
 *142
 
 Equity must see that the statute is executed in those points, in which the Courts of law are inefficient.
 

 The fund out of which the plaintiffs ask satisfaction, it is admitted by the demurrer, belongs to the debtor, Long, and also that the securities have been transferred without consideration and in trust for him, and collusively kept on foot to elude the payment of those debts. It is an interest acquired subsequently to the discharge of Long; and the case is within the mischief the act was intended to remedy, and therefore within the remedial power of some Court, and not being within that of a Court of Law, falls into that . class of the duties of the Chancellor which forbids him to allow a right to fail for want of an adequate legal remedy.
 

 Upon views like these the case of
 
 Edgell
 
 v.
 
 Haywood
 
 and
 
 Dowe, 3
 
 Atk.
 
 352,
 
 was determined by Lord Hardwicke, upon one of the insolvent debtors’ acts, called the Lords’ acts, passed 10 Geo. II, ch. 26 ; in which after discharging the person, “it was
 
 provided
 
 that creditors might take out a new execution against the lands and goods, &c., as they-might have done had the prisoner never been taken in execution.” Upon the bill of the creditor against the debtor and the executor of a will in which a legacy was bequeathed to the debtor, it was decreed that an account should be taken of the debt to the plaintiff for principal, interest and costs, at law and in equity, and also an account of what was due for the legacy, and that the latter should be applied in satisfaction of the former. It is argued on the part of the defendants that our act gives no more countenance to the jurisdiction, than the principles of general equity did before the act. It is said, that under the former law the debt was declared to be satisfied, and that this must be taken liberally in favor of poor debtors, and that therefore, although this was altered by the subsequent act of 1793, the alteration cannot be extended beyond the words of the latter act, which are “ that execution may issue against any estate,” &c. But we think the spirit of the act is inconsistent with the literal interpretation insisted on.
 

 The same argument ivas urged in the case before Lord Hakdwicke, upon the words of that statute, which have
 
 *143
 
 already been quoted, and give much more color to the argument than those of our act. But he held the act to be beneficial to the creditor, and therefore not confining him to the same remedy by execution-, as before the statute; and relief was given because the Court looked upon the legacy “ as a part of the property of the debtor which the creditor could not come at without the aid of the Court.”
 

 The judgment is put distinctly upon the loss of the
 
 ca. sa ;
 
 for although the remedy, through the grace of the crown, upon an outlawry is also mentioned, yet that does not alter the principle, which is not that the remedy at law was more or less efficacious; but that when the right of the creditor to demand the person of the debter ceases, there is in regard to property thus situated,
 
 no
 
 remedy- at law.
 

 If that was so upon those words which were put into that act by way of
 
 proviso,
 
 much more plainly correct is such a construction of our act. It passed twenty years after that it alters and amends, and professes as the reasons for altering the previous provisions, that they were against good morals and led to fraudulent conveyances. To what is allusion here made
 
 1
 
 We think very clearly to the bad morality of a debtor, whose person the law had benign antly delivered, keeping back any thing in any form from the satisfaction of his just creditor. Therefore, when the act gives an execution against the debtor’s estate, the provision is not to be so construed as to be illusory, or so as to put it in the power of the debtor to elude it, “ against good morals.” On the contrary, an
 
 effectual
 
 execution is meant; and as that cannot be had at law, this Court, in conformity to the purposes of the legislature, must give it. The act not only repeals parts of the previous law, but upon its face is affirmative and remedial in its enactments; and in that spirit this ' Court must give effect to it by decreeing relief to creditors here, upon the ground (if no other) that the law intended they should be satisfied, and that they cannot be satisfied by any other means than those in the power of this Court.
 

 The decree must therefore be reversed with costs, and the cause remanded, that the defendants may answer, and other proceedings be had according to the course of the Court.
 

 Per Curiam. Decree reversed.